Wright, &c., v. Baker.

CASE 58—MANDAMUS—MAY 11.

94   343
129  851

# Wright, &c., v. Baker.

### APPEAL FROM LETCHER CIRCUIT COURT.

1. MANDAMUS DOES NOT LIE to compel a county judge to issue a writ of *ad quod damnum* for the purpose of condemning land upon which to build a school-house, as his action upon an application by the trustees of a school district for such a writ is judicial and not ministerial.

2. THE TRUSTEES OF A COMMON SCHOOL DISTRICT are created a body-politic, and when they sue as such a body the withdrawal by some of the trustees of their names as plaintiffs does not affect the proceeding.

S. B. DISHMAN AND H. C. FAULKNER FOR APPELLANTS.

The county judge acts ministerially upon the application for the writ of *ad quod damnum*, and, therefore, mandamus lies to compel him to issue the writ. (Gen. Stats, chap. 18*b*; Common School Law, art. 8, sec. 6; McDonald, Justice, &c., v. Jenkins, &c., 14 Ky. Law Rep., 157; s. c., 93 Ky., 249.)

TYREE & ADAMS FOR APPELLEE.

1. As only one of the trustees is suing, there is a defect of parties. (Civil Code, sec. 24.)

2. The county judge acted judicially in refusing the writ, and, therefore, mandamus does not lie. (Commonwealth for, &c., v. Boone County Court, 82 Ky., 632.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The trustees of common school district No. 7, of Letcher county, having selected a parcel of land as the most suitable for a school-house site, and being unable to agree with the owner as to its price, he, in fact, declining to sell at any price, made application to County Judge Baker for a writ of *ad quod damnum*. This was made by petition, and Moses Bently, the owner of the land, was made a defend-ant. He appeared and filed an answer, alleging that

the place sought to be condemned was not as near as practicable to the center of the district as would be convenient of access to all the inhabitants thereof; and that the contemplated site was set in fruit trees, and was in use as an orchard. The act provides that the trustees "shall not have the right to condemn any private property which is used as a residence, garden, orchard or burying-ground." After hearing the evidence, the court refused to issue the writ. Thereupon, the trustees filed their petition in the circuit court, setting forth the facts connected with the refusal of the judge to issue the writ, and, after notice, moved the court for a writ of mandamus against the county judge to compel him to issue the writ in question. The issues of fact and of law were all gotten before the court by demurrers and other pleas, and on hearing, the court dismissed the petition, and the trustees have appealed to this court. They rely on the provisions of section 6, article 8, chapter 96a, General Statutes, as entitling them to a writ of *ad quod damnum* as a matter of right upon their application, as made to the county judge.

That section gives them the right, with the consent of the county superintendent, to "take land, by purchase or donation, for the purpose of erecting thereon a school-house;" and "if they can not agree with the owner of any land most suitable for a school-house site, as to the price and terms of purchase and sales thereof, they shall apply to the judge of the county court by petition, in which they shall set forth, by metes and bounds, the lands they seek to condemn,

and the county court shall issue a writ of *ad quod damnum*, directed to the sheriff, to be executed and returned to said court as in case of condemning lands for the use of railroads and turnpike companies."

In this case all the necessary requirements and conditions existed, entitling the applicants to the writ, as shown by their petition before the county judge, and the question is, did that judge have any discretion as to its issual, and should he have allowed the answer to be filed?

It is argued that in proceedings for the condemnation of lands for turnpike and railroad purposes, to which the school law refers, such writ must issue upon application as a matter of right; but on examination of the statute on this subject, chapter 18 *b*, pages 281, 282, General Statutes, we find that upon the proper application made, the county court is required to appoint commissioners to assess the damages, who proceed as directed by the statute *ex parte*, and, after filing their report, a summons is issued against the owner of the land sought to be condemned, to show cause why the report shall not be confirmed, and the court shall examine the report, and if it be in conformity with the act regulating the proceedings, may confirm same to the extent only to which no exceptions have been filed; and when exceptions are filed, the court shall forthwith cause a jury to be empanneled to try the issues of fact made by the exceptions, the court sending the jury to view the land if desired. If sufficient cause be not shown for setting aside the verdict, the court will render judgment in conformity thereto.

It will be observed that in this proceeding ample opportunity is afforded the land-owner to raise any issue of law or fact concerning the right to take his land. The matter of damages is not alone to be determined. This is the question submitted to the jury on the writ of *ad quod damnum*, but the court must determine, as a matter of law, whether the report taking the land is in conformity with the act, and the owner is allowed to show, if he can, why his land shall not be taken. Matters of law and of evidence are submitted, and the judgment of the court is necessarily a judicial one, and involves discretion on the part of the court. Before the jury is called on to assess the damages for the actual taking, the right to take under the particular law of the procedure must be first determined. And this must be and is true of the provisions of the school law, else the act would be violative of the Constitution.

Some legal tribunal must pass on the question of whether an orchard is about to be taken, or a garden or burying-ground; and these determinations are not ministerial but judicial acts. The provision that "one-third of the school electors of any district may appeal from the decision of the trustees in the location of the school house, or site for the same, to the county superintendent of the county, whose decision in the case shall be final," does not affect the land-owner or abridge his right to have the condemnation proceedings conform to the law purporting to authorize them. The act of county judge Baker, therefore, in dismissing the petition and denying the right of the trustee to condemn the particu-

lar land in question, however erroneous it might have been, was a judicial one, and was not the subject of mandamus proceedings.

The effort by the two Bentleys to withdraw their names as plaintiffs in the action, did not affect the proceeding. The trustees of district No. 7 are created a body-politic, and may sue, and in this case did sue, as such body. The individuals might have withdrawn, because they did not want to be individually bound for costs. Nor was it proper to allow Baker, the county judge, to file an answer raising the issues of fact as to the location of the site. He has nothing to do with those issues, and can not make them, though, as judge of the county court, he decided them. His connection and interest with the case then ends.

But his judicial action not being controllable by mandamus, the judgment dismissing the petition therefor is affirmed.